**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CIVIL ACTION NO. 09-55-JBC**

**PAMELA STEPHENS,**                                                                                   **PLAINTIFF,**

**V.**                                    **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                                              **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment.

R. 7, 10.  The court will deny the plaintiff's (R. 7) and the Commissioner's motions

(R. 10) and will remand this case to the ALJ for further findings in accordance with

this decision.

**I.      Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to

deny disability benefits is limited to determining whether there is substantial

evidence to support the denial decision and whether the Secretary properly applied

relevant legal standards.  *See Brainard v. Sec'y of Health & Human Servs.*, 889

F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401

(1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Cutlip v. Sec'y Health & Human Servs.,* 25

1

F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo*, resolve

conflicts in the evidence, or decide questions of credibility.  *See id.*  Rather, the

ALJ's decision must be affirmed if it is supported by substantial evidence, even

though the court might have decided the case differently.  *See Her v. Comm'r of*

*Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

In determining disability, the ALJ conducts a five-step analysis.  At Step 1,

the ALJ considers whether the claimant is performing substantial gainful activity; at

Step 2, the ALJ determines whether one or more of the claimant's impairments are

"severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly

or in combination, meet or equal a listing in the Listing of Impairments; at Step 4,

the ALJ determines whether the claimant can perform past relevant work; and

finally, at Step 5 – the step at which the burden of proof shifts to the

Commissioner – the ALJ determines, once it is established that the claimant cannot

perform past relevant work, whether significant numbers of other jobs exist in the

national economy which the claimant can perform.  *See Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520.

**II.    The ALJ's Determination**

At the time of the alleged onset of Stephens's disability, she was fifty-two

years of age.[1]  AR 93.  She filed applications for disability insurance benefits

---

[1]Stephens variously fixes the date of the onset of her disability as July 7, 2003 (*see* AR 93, 118), or September 12, 2003 (*see* AR 128).  Her instant motion states that she last worked substantially on September 12, 2003 (R. 10 at 2), which her attorney confirmed during the hearing (AR 438).  On either date, she

("DIB") and disabled widow's benefits ("DWB") that are here at issue on May 12, 2006.[2]  AR 93-97.  The claims were initially denied on December 15, 2005 (AR 49-52), and again upon reconsideration on April 19, 2006 (AR 57-59).  After a hearing on September 4, 2008 (AR 434-79), Administrative Law Judge ("ALJ") Deborah Smith determined that Stephens did not suffer from a disability as defined by the Social Security Act (AR 17-30).

At Step 1, the ALJ found that Stephens had not engaged in substantial gainful activity since the alleged onset date, September 12, 2003.  AR 23.  At Step 2, the ALJ found that Stephens suffered from the following combination of impairments considered "severe" under 20 CFR 404.1520(c): degenerative disc disease of the cervical spine, a history of C8 radiculopathy, a history of right-sided ulnar radiculopathy, and degenerative disc disease of the lumbar spine.  AR 23-26.  The ALJ then determined at Step 3 that Stephens's impairments did not meet or equal a listing in the Listing of Impairments in 20 CRF § 404, Subpart P, Appendix 1.  AR 26.  At Step 4, the ALJ determined that Stephens was able to perform her past relevant work as a data transcriber and as an office clerk.  AR 29.  Thus, the ALJ denied Stephens's claims for DIB and DWB on September 30, 2008.  AR 17-

---

was fifty-two years of age.

[2]Stephens previously filed for DIB and DWB on November 28, 2003.  Her requests were denied initially, upon reconsideration, and by an ALJ on July 28, 2005.  The plaintiff did not appeal the ALJ's decision or take any further action, rendering that unfavorable decision final and binding.  20 C.F.R. §§ 405.372, 405.450(b); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840-41 (6th Cir. 1997).

3

30.  Stephens appealed the decision (AR 16A-16B), and her request for review was

denied (AR 7-9).  Following the denial, Stephens filed this action.

III.    **Legal Analysis**

Stephens claims that the ALJ's opinion is not supported by substantial

evidence for three reasons: (1) the ALJ failed to find that Stephens's mental

impairment was "severe;" (2) the ALJ erred in finding that Stephens could perform

light work; and (3) the ALJ incorrectly found that Stephens is capable of performing

her past relevant work.  R. 7 at 7-11.  The court will consider each in turn.

A.    **The ALJ's characterization of Stephens's mental impairments as not
severe constitutes reversible error because those impairments were
not considered at successive steps.**

The ALJ wrongly concluded that Stephens did not suffer from a "severe"

mental impairment, but that conclusion is insufficient, alone, to reverse and remand

the ALJ's decision.  *See Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d

240, 244 (6th Cir. 1987).  As long as an ALJ finds that other impairments are

severe, continues on with the sequential evaluation process, and considers all of a

claimant's impairments in the remaining steps, the error is harmless.  *Id.  See also*

20 C.F.R. § 404.1523 (stating that if there is a severe impairment or combination

thereof, "the combined impact of the impairments will be considered throughout

the disability determination process").  In the instant case, however, it is not clear

whether the ALJ considered Stephens's mental impairment at other steps of the

sequential disability determination process, so it must be remanded for the ALJ to

4

do so.  *See Jamison v. Comm'r of Soc. Sec.*, 2008 WL 2795740, at *8-9 (S.D.
Ohio July 18, 2008) (distinguishing *Maziarz,* reversing, and remanding because
there was no evidence that the ALJ considered the plaintiff's cardiac impairment,
which was not identified as "severe" at the second step, at other steps of the
sequential evaluation process).

      The ALJ thoroughly examined the medical evidence of Stephens's mental
impairments in arriving at her conclusion that they were not severe at the second
step, but the fourth step, where the ALJ made findings regarding Stephens's RFC,
was devoid of any explicit reference to those impairments.  AR 25-29.  The ALJ's
statement that "[p]hysical exam findings were repeatedly benign, showing a
virtually full range of function.  Testing showed only mild to moderate findings,"
may have alluded to Stephens's various psychiatric evaluations, but it is not
certain.  Thus, the *Maziarz* logic does not apply.  *See Newton v. Astrue*, No. 1:06-
VC-1542-AJB, 2008 WL 915923, at *9-11 (N.D. Ga. April 1, 2008) ("Instead of
guessing whether the ALJ considered these conditions, the Court finds that it is
best to remand to the Commissioner to consider explicitly all impairments.").  The
ALJ's failure to address or include any limitations from Stephens's mental
impairments in determining her RFC is not harmless error, so this case will be
reversed and remanded for further development and clarification of Stephens's
mental impairments on her ability to do work.  *See Meadows v. Comm'r of Soc.
Sec.*, No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D. Ohio Nov. 13, 2008).

**B.**   **The ALJ's finding that Stephens can physically perform light work is supported by substantial evidence, although the ALJ must consider how her mental impairments affect her RFC.**

In cases like the present one where there are consecutive disability claims, the latter ALJ is bound by findings of fact made in a prior disability determination unless new and material evidence establishes changed circumstances. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997); *Dennard v. Sec'y Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990). Substantial evidence supports the ALJ's conclusion that Stephens's physical impairments do not present an exception to the general rule, so the ALJ properly adopted ALJ Miller's finding that Stephens has the residual functional capacity (RFC) to physically perform light work. AR 26-29.

Stephens alleges that her condition is now much worse than when ALJ Miller made her decision (R. 7), but the ALJ found that Stephens "has not had much additional treatment and her existing problems have all been considered by Judge Miller, with the exception of the lumbar degenerative disc disease," which the ALJ considered (AR 27). However, as noted in section A above, because the ALJ did not consider Stephens's mental impairments in arriving at Stephens's RFC in the fourth step, this case will be reversed and remanded to the ALJ to make specific findings as to the affect of Stephens's alleged mental impairments on her RFC.

Stephens's regular physical examinations by Dr. John Allnutt were benign, and at some visits, she did not even complain of fibromyalgia or orthopedic

problems.  AR 28; 374, 397.  As recently as January 25, 2008, Dr. Allnutt

reported that Stephens's neck was supple and normal, her spine was normal, she

had no CVA tenderness, and her four neurological parameters were normal.  AR 28;

387-406.  As ALJ Smith noted, Stephens's 2008 MRIs revealed displacement at

several levels, multilevel degenerative disc disease, and spondylosis (AR 25; 409-

10, 415-16), but the mere diagnosis of a condition does not indicate the severity of

the condition, so it cannot be said that those conditions necessarily changed

Smith's physical ability to perform light work during the relevant period.  *See Higgs*

*v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Moreover, Stephens's chiropractor

of many years, William King, D.C., did not perform an exam to determine her

disability, nor did he recommend any further treatment or impose functional

restrictions based on her MRI results.  AR 408.

The ALJ rejected ALJ Miller's diagnosis of severe fibromyalgia because "it

does not appear that [Stephens] has been seen by any rheumatologist who

confirmed this diagnosis, nor does any other physician seem to diagnose the

problem during the relevant time."  AR 27-28.  Instead, the ALJ determined that

other orthopedic problems could account for Stephens's complaints of pain,

although objective evidence does not support the severity of pain or symptoms that

she alleges.  *Id*.

Notably, none of Stephens's treating physicians imposed specific functional

limitations or restrictions on her that were related to her physical impairments.  In

7

fact, Dr. Robert Wyendant, one of Stephens's treating physicians, twice recommended that Stephens participate in aerobic exercise, indicating that her purported pain was not "medically preclusive of activity." AR 23, 320, 323. In fact, when Stephens presented to Dr. Allnutt in May 2006, so that he could complete disability forms for her, she told him that she exercised (AR 404), and she told Dr. Kevin Eggerman that her daily routine included slow yoga and caring for her pets and house, including cleaning, cooking, and doing laundry (AR 303).

Even assuming that Stephens's health worsened after ALJ Miller's disability decision, she did not do anything to alleviate her symptoms or improve her condition, which suggests it was not as disabling as she alleged. *See* 20 C.F.R. § 404.1529(c)(3) (setting forth evidence, including non-medicinal treatment, to be considered in evaluating the intensity, persistence, and effect of a claimant's symptoms); 20 C.F.R. § 404.1530 (concerning the importance of following prescribed treatment). Stephens did not receive any medical treatment at all for physical problems in 2007. AR 24. Further, Dr. Wyenandt, who concluded that Stephens was "almost assuredly" permanently disabled, stated that she "refuses meds and counseling." AR 320. Dr. Allnutt's notes similarly reflect that Stephens did not want to take any medications for her fibromyalgia, hypercholesterolemia, or insomnia because of her alleged sensitivities to medications. AR 29, 387-406. In contrast, the ALJ pointed out that Stephens has been on Xanax long-term and took multiple prescription medications for upper respiratory and ear infections. AR 29.

8

There is no evidence in the record that Stephens followed up with the pain management specialist to whom Dr. Allnut referred her to help treat her radiculopathy.  AR 389.  In fact, Dr. Allnut wrote in a July 22, 2008, letter that Stephens "has been reluctant to see the appropriate specialists to treat" her radiculopathy and fibromyalgia and "[h]er prognosis is uncertain, as she has not tried the usual treatments for these conditions which are prescribed by the above named specialists [rheumatologists and pain management specialists].  Work limitations will depend on what success the above named specialists have in terms of treating her radiculopathy and fibromyalgia."  AR 418.

The ALJ did not find that Stephens suffered from severe fibromyalgia, but she properly weighed the medical evidence of Stephens's physical condition in adopting ALJ Miller's "light work" RFC.  Ultimately, the ALJ incorporated more physical restrictions into the RFC than the two state medical consultants, who found that Stephens could engage in medium work.  (AR 354-362, 363-371).  For the reasons above and because the record did not contain new evidence that warranted a change in Stephens's RFC, the ALJ's findings as to Stephens's physical restrictions are supported by substantial evidence.

    **C.**    **The ALJ's finding that Stephens is capable of performing light work, and thus her past relevant work, is not supported by substantial evidence.**

Given that the ALJ did not consider Stephens's mental impairments at the fourth step, it is unclear whether Stephens's RFC changed after ALJ Miller's

decision.  If not, the instant ALJ properly concluded that Stephens could perform

light work, including her past relevant work, which is the same conclusion reached

by the prior ALJ.  *See Drummond*, 126 F.3d at 842-43.  The instant ALJ noted at

the fifth step that

> even if I found severe mental impairments (which are not supported) and
> limited the claimant further, with a residual functional capacity that
> included a limitation to avoid highly complex work, the vocational expert
> testified that the hypothetical individual, with that residual functional
> capacity, could still perform the claimant's past relevant work as noted
> above.

AR 30.  Upon remand, ALJ Smith must properly apply the relevant legal standards

and more fully consider the affect of Stephens's mental impairments at this fifth

step.

## IV.    Conclusion

Accordingly, **IT IS ORDERED** that Stephens's motion for summary judgment

(R. 7) and the Commissioner's motion for summary judgment (R. 10) are **DENIED.**

**IT IS FURTHER ORDERED** that the case is **REVERSED** and **REMANDED** to the ALJ

for further findings in accordance with this decision.

**Signed on  March 31, 2010**



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY